[Cite as *Gordon v. Mt. Carmel Farms, L.L.C.*, 2024-Ohio-1313.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

JASON GORDON, et al., :

     Appellees, : CASE NO. CA2023-03-012

     : O P I N I O N
    - vs -           4/8/2024

     :

MT. CARMEL FARMS LLC, :

     Appellant. :

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020 CVH 000194

Santen & Hughes, and Brian P. O'Connor, for appellant.

John Woliver, for appellees.

**HENDRICKSON, P.J.**

{¶ 1} Defendant-Appellant, Mt. Carmel Farms, LLC ("MCF"), appeals the trial court's decision finding it in contempt of the court's injunction in favor of Plaintiffs-Appellees, Jason and Nicole Gordon.

**Factual Background**

{¶ 2} The Gordons own a home at 4340 Mt. Carmel Road in Union Township,

Clermont County. They received the property from a relative and built a house there in 2005. Their property is zoned for single family residential use under the Union Township Zoning Resolution ("UTZR"). MCF owns the property located at 4370 Mt. Carmel Road and it is zoned as an estate residential district.[1] In 2019, the Gordons gave a small part of their land that touches MCF's property to Jason Gordon's brother. As a result, the Gordons' property shares no boundary with MCF's. However, the Gordons' property remains within several hundred feet of MCF's.

**{¶ 3}** Over the years, MCF permitted various businesses to operate on its property, including two landscaping businesses, an auto repair business, a concrete sawing company, a steel fabricator, and an exercise equipment business. The Gordons' property and MCF's property share a common ingress and egress easement that consists of a 30-foot-wide gravel road that extends several hundred feet in length. Part of this easement crosses over a portion of the Gordons' property. The businesses operating on MCF's property use this easement as well as an additional road MCF paved on its property to enter and exit the area.

## Procedural Background

**{¶ 4}** The Gordons filed the instant suit in 2020. Their original complaint named MCF as well as Union Township and its zoning director as defendants. However, after much procedural wrangling, including appellate litigation, the latter parties were dismissed. *See generally*, *Gordon v. Mt. Carmel Farms, LLC*, 12th Dist. Clermont No. CA2020-09-054, 2021-Ohio-1233.

**{¶ 5}** The Gordons only named MCF in their first amended complaint. The Gordons alleged and later presented evidence of various injuries resulting from MCF

---

1. Part of Mt. Carmel's property is in Clermont County and part of it is in Hamilton County. The Hamilton County portion is zoned for light industrial use.

allowing businesses to operate on its property: (1) decreased property value for the Gordons; (2) "substantial" traffic on their shared easement; (3) significant noise and dust; (4) medical treatment for their children as a result of the dust; (5) damage to the shared easement; and (6) impairment of the scenic view of their property.

{¶ 6} The complaint petitioned for declaratory judgment that MCF's use of its property violated the UTZR and that the shared easement was not necessary for MCF's use. The complaint also requested an injunction to prevent MCF "from continuing uses on [its] property in violation of" zoning regulations and "preventing all such nuisance activities * * *."

{¶ 7} In July of 2022, the Gordons moved for a preliminary injunction. The motion requested that the trial court issue an injunction "pursuant to R.C. 519.24 against [MCF] enjoining all activity [on its property] which violates the UTZR." The motion also requested the trial court issue a preliminary injunction pursuant to Civ.R. 65 to prohibit MCF from constructing any new structures on its property that violated zoning codes.

{¶ 8} The parties briefed the issue and an evidentiary hearing was held on September 9, 2022. The trial court and counsel had in-depth discussion on both Civ.R. 65 and R.C. 519.24's applicability to the hearing and the Gordons' request for a preliminary injunction. As part of that discussion, counsel for MCF stated, "[M]y understanding is we're not here today for their one bite at the apple under the statutory [R.C. 519.24] injunction. If we are, so be it. But I don't think they're entitled to come back later and again argue for it with more evidence."

{¶ 9} After the hearing, the parties agreed that MCF was not going to construct new structures that potentially violated zoning regulations, and the Gordons withdrew that part of their motion. The parties also submitted additional briefing after the hearing regarding the applicability of Civ.R. 65 and R.C. 519.24.

{¶ 10} On October 4, 2022, the trial court granted the Gordons an injunction. In its decision, the trial court found that besides some timber harvesting, "*all* of the other uses MCF has employed and currently employs for its properties are illegal under the UTZR." (Emphasis sic.) The trial court also found the Gordons' property was adjacent or neighboring property to MCF's and that the Gordons were especially damaged by MCF's use of the property because of, among other things, "excessive traffic, noise, dust, and light pollution," damage to the easement and culvert, and diminishment of the scenic view at the property.

{¶ 11} The trial court also observed:

> MCF argues that a preliminary injunction should not be issued because it is meant to maintain the status quo of the parties pending final adjudication, and in this case MCF's illegal uses have been occurring for years. While it is true that MCF has been operating outside of the UTZR for years * * * MCF consistently contracts with new tenants. And with each new business that opens * * * the plaintiffs experience greater and more prolonged harm.

{¶ 12} Citing these and other reasons, the trial court issued an injunction under R.C. 519.24 that "restrained [MCF] from using or permitting the use of its property * * * in any way inconsistent with 'ER' Estate Residential permitted uses under the [UTZR]." The order continued, "Businesses that are not consistent with 'ER' Estate Residential permitted use include, but are not limited to: automotive repair shops, concrete sawing businesses, steel fabricating businesses, landscaping businesses, and storage businesses." The Court's order gave MCF 30 days to comply with the order and bring the property into compliance.

{¶ 13} Approximately two months later, the Gordons filed a motion to find MCF in contempt for violating the injunction. In February of 2023, the trial court found that several businesses no longer operated on the property, including steel fabrication, concrete

- 4 -

sawing, graphics and apparel, and safety equipment businesses. However, the court also found that two landscaping companies continued to operate on the property and stored work vehicles and equipment there, "including trucks, excavators, snow plows [sic], shipping containers, salt storage, and other miscellaneous items."[2]

{¶ 14} The trial court also took notice of Jason Gordon's testimony that the shared easement "continue[d] to experience a high volume of traffic * * * from vehicles traveling to and from MCF's property." As a result of these findings and testimony, the trial court found MCF in contempt and ordered MCF be fined $1,000 per day for each day violations persist. The trial court later stayed its imposition of fines pending this appeal.

### Standards of Review

{¶ 15} "To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order." *Donlon v. Lineback*, 12th Dist. Warren No. CA2016-03-015, 2016-Ohio-7739, citing *Hetterick v. Hetterick,* 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35. The standard of review for contempt orders is abuse of discretion. *Id*. at ¶ 39. A trial court abuses its discretion when it acts "unreasonably, arbitrarily, or unconscionably." *Bowman v. Leisz*, 12th Dist. Warren No. CA2014-02-029, 2014-Ohio-4763, ¶ 17, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, (1983). This "connotes more than an error of law or judgment." *Id.*

{¶ 16} Contempt proceedings also necessitate review of the order a party is found to have violated, even if that underlying order is not appealable. *Smith v. Chester Twp. Bd. of Trustees*, 60 Ohio St.2d 13, 16, (1979). The burden of proof for injunctive relief is

---

2. The trial court also found that a third company operated on MCF's property, but there was no evidence of what that company did, so the trial court did not sanction MCF regarding that company.

clear and convincing evidence which "provide[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Freeman Indus. Prods., L.L.C. v. Armor Metal Group Acquisitions, Inc.*, 193 Ohio App.3d 438, 2011-Ohio-1995, ¶ 17 (12th Dist.). A reviewing court will not overturn the decision to grant a preliminary injunction unless an abuse of discretion occurs. *Id.*

{¶ 17} Finally, questions of law, including statutory construction and an injunction's vagueness, are reviewed de novo. *Willow Grove, Ltd. v. Olmsted Twp. Bd. of Zoning Appeals*, 169 Ohio St.3d 759, 2022-Ohio-4364, ¶ 16, citing *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 25, in turn citing *Lang v. Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12; *see also Columbus v. State*, 10th Dist. Franklin No. 22AP-676, 2023-Ohio-2858, ¶ 25-27.

### Discussion

{¶ 18} On appeal, MCF raises a single assignment of error:

{¶ 19} **Assignment of Error No. 1: THE TRIAL COURT ERRED IN HOLDING APPELLANT IN CIVIL CONTEMPT.**

{¶ 20} Within this assignment of error, MCF raises three separate issues for our review.

> **A. Appellant's First Issue Presented for Review and Argument: A court's generic order restraining a party from using property "in any way inconsistent" with a zoning resolution is too generic to be enforced by civil contempt.**

{¶ 21} MCF argues on appeal that the trial court's injunction was impermissibly vague and "did not specifically tell [MCF] what it was ordering [MCF] to do * * *."

{¶ 22} Under Civ.R. 65(D), injunctions "shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or

acts sought to be restrained * * *." The Ohio Supreme Court has observed that an injunction meets this standard where, "'an ordinary person reading the court's order [is] able to ascertain from the document itself exactly what conduct is proscribed.'" *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 60 (1990), quoting 11 Wright & Miller, *Federal Practice and Procedure*, Section 2955, at 536-537 (1973). While injunction orders should be specific and provide adequate notice of what is expected, they need not be perfect and cover every conceivable situation in minute detail. *Dunn v. Ransom*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, ¶ 112, citing *Adkins v. Boetcher*, 4th Dist. Ross No. 08CA3060, 2010-Ohio-554, ¶ 43.

{¶ 23} Put simply, MCF's arguments attempt to manufacture legal controversy by ignoring a critical part of the court's order. The trial court not only prohibited MCF from using its property "in any way inconsistent" with the UTZR but illustrated exactly what it meant in the next sentence by listing types of businesses not consistent with its order, including, "but * * * not limited to: automotive repair shops, concrete sawing businesses, steel fabricating businesses, landscaping businesses, and storage businesses."

{¶ 24} These were the exact types of businesses MCF was found to have let operate on its property. Consistent with the trial court's order, MCF had all businesses removed from its property except two the court found were landscaping companies. Such companies were explicitly covered by the injunction. Importantly, MCF does not contest the finding by the trial court that landscaping businesses remain on its property and store their equipment there.

{¶ 25} We find the trial court's injunction was not impermissibly vague.

> **B.  Appellant's Second Issue Presented for Review and Argument: R.C. 519.24 narrowly limits those who have standing to institute an action for a statutory injunction to those who are adjacent or neighboring a defendant's parcel and are especially damaged by the alleged zoning**

**violation.**

{¶ 26} MCF also argues on appeal that the Gordons have no standing under R.C. 519.24 because their property no longer shares a property line with MCF's as a result of the 2019 transfer of property to Jason Gordon's brother. Further, MCF argues that the Gordons are not "especially damaged" because their property value has increased.

{¶ 27} R.C. 519.24 states that when "any adjacent or neighboring property owner who would be especially damaged by [a violation of applicable zoning regulations] * * * may institute injunction * * * or any other appropriate action or proceeding to prevent, enjoin, abate, or remove" unlawful activity at a property. "Adjacent" and "neighboring" are not defined by the statue. In such cases, courts "afford the terms their plain, everyday meanings, looking to how such words are ordinarily used * * *. This work includes reading words in their context and construing them 'according to the rules of grammar and common usage.'" *State ex rel. More Bratenahl v. Village of Bratenahl*, 157 Ohio St.3d 309, 2019-Ohio-3233, ¶12, citing *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, ¶ 8-10, in turn quoting R.C. 1.42. As a result, courts often look to dictionaries to determine a word's meaning. *Athens v. McClain*, 163 Ohio St.3d 61, 2020-Ohio-5146, ¶ 30.

{¶ 28} R.C. 519.24 is nearly identical to its predecessor, G.C. 3180-49 (effective September 25, 1947). That statute also used the terms "adjacent" or "neighboring." In the 1940s, "adjacent" and "neighboring" were used relatively interchangeably. Adjacent, *Webster's New International Dictionary* (2d Ed. 1942) ("Lying near or close, or contiguous; neighboring; bordering on; * * *."); Adjacent, *The New Century Dictionary of the English Language* (1946) ("Lying near (to); neighboring; contiguous."); Neighboring, *Webster's New International Dictionary* (2d Ed. 1942) ("Living or being near; adjacent; * * *."); Neighboring, *The New Century Dictionary of the English Language* (1946) ("Living or

situated near; adjacent.").

{¶ 29} Today, these words have more discernable differences.  Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/adjacent, (accessed Mar. 27, 2024) ("Having a common endpoint or border.").  Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/neighboring (accessed Mar. 27, 2024). ("One living or located near another.").

{¶ 30} What is clear from these definitions is that they have relative or indefinite meanings that should be determined by the way they are used in the statute.  *Loichot v. Allstate Dev. Corp.*, 33 Ohio App.2d 121, 125-26 (5th Dist.1963).  The use of "or" between "adjacent" and "neighboring" implies the words have different meanings.  *State v. Hensley*, 12th Dist. Warren No. CA2021-06-055, 2023-Ohio-119, ¶ 25.  After considering the above definitions and how the words are used in R.C. 519.24, the statute does not require a shared border with offending property.  *Wilkins v. Harrisburg*, 10th Dist. Franklin No. 14AP-1028, 2015-Ohio-5472, ¶ 29-35; *see also Loichot*, at 125.

{¶ 31} Here, only a small parcel of land, once owned by the Gordons before being gifted within the family, separates their land from MCF's, and the Gordons' property remains within several hundred feet of MCF's.  As a result, the Gordons' property is sufficiently near or close to MCF's to be covered under R.C. 519.24.

{¶ 32} Due to their close proximity, we also find the Gordons have been "especially damaged."  Special injury or damage occurs when the "injury suffered by the plaintiff which is different in kind rather than degree from that suffered by other members of the public exercising the same public right."  *Verbillion v. Enon Sand & Gravel, LLC*, 2nd Dist. Clark No. 2021-CA-1, 2021-Ohio-3850, ¶ 45.  While special injury can be demonstrated through decreased property values, nuisances which interfere with one's use of their land can also be deemed special damages meriting issuance of injunctive relief.  *See Id.* at ¶

45-47; *Camp Washington Community Bd., Inc. v. Rece*, 104 Ohio App.3d 750, 754 (1st Dist.1995), citing *Miller v. W. Carrollton*, 91 Ohio App.3d 291, 296, (2nd Dist.1993); *see also Combs ex rel. Estate of Combs v. Baker*, 12th Dist. Butler No. CA 2001-01-020, 2001 WL 1525324, *5; *Busch v. Vosler*, 12th Dist. Preble No. CA96-09-014, 1997 WL 277271, *2 (May 27, 1997), citing *Miller*.

{¶ 33} While there is little in the record to substantiate the Gordons' belief that their property value decreased, there is ample evidence the businesses that operated on MCF's property caused various issues for the Gordons, including "excessive traffic, noise, dust, and light pollution," damage to the easement and culvert, and diminishment of the scenic view at their property. MCF does not contest these findings on appeal.

{¶ 34} Therefore, we find that the Gordons have standing under R.C. 519.24.

### C. Appellant's Third Issue Presented for Review and Argument: A preliminary injunction should be used to preserve the status quo.

{¶ 35} MCF argues that the trial court's injunction was improper because it altered the status quo before a trial on the merits by forcing it to remove businesses that had been operating on its properties for years. MCF also suggests that the trial court acted improperly because it "decided to leapfrog a full trial on the merits and issue a preliminary injunction and then a contempt order based on a limited record."

{¶ 36} We have previously held that in general, "[t]he purpose of a preliminary injunction is to preserve a status between the parties pending a trial on the merits." *Freeman Indus. Prods., L.L.C. v. Armor Metal Group Acquisitions, Inc.*, 193 Ohio App.3d 438, 2011-Ohio-1995, ¶ 14 (12th Dist.), quoting *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267 (1st Dist.2000). However, preservation of the status quo concerns preliminary injunctions issued pursuant to Civ.R. 65. Here, the trial court issued the injunction pursuant to R.C. 519.24.

**{¶ 37}** R.C. 519.24 is a "special statute." *Kroeger v. Std. Oil Co. of Ohio*, 12th Dist. Clermont No. CA88-11-086, 1989 WL 87837, *5; *Brown v. Sperry*, 23 Ohio App.2d 163, 167 (3rd Dist.1970); *Ameigh v. Baycliffs Corp.*, 127 Ohio App.3d 254, 260 (6th Dist.1998). Under R.C. 2502.02, "'Special proceeding' means an action or proceeding that is specially created by statute * * *." The Civil Rules apply to all legal proceedings except "special statutory" proceedings where they are "clearly inapplicable." Civ.R. 1(C). The Ohio Supreme Court has held that the Civil Rules are clearly inapplicable "when [its] use will alter the basic statutory purpose for which the specific procedure was originally provided in the special statutory action." *Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, ¶ 24, quoting *Price v. Westinghouse Elec. Corp.*, 70 Ohio St.2d 131, 133 (1982).

**{¶ 38}** We have observed in the past that "[b]ecause [R.C. 519.24] grants the injunctive remedy, [a plaintiff is] not required to plead or prove an irreparable injury or that there is no adequate remedy at law, as is required by Civ.R. 65 * * *. [A plaintiff is] required to demonstrate only that the property was being used in violation of the zoning ordinance." *Union Twp. Bd. of Trustees v. Old 74 Corp.*, 137 Ohio App.3d 289, 294-95 (12th Dist.2000), citing *Kroeger*, 1989 WL 87837 at *5; and *Miller v. Byler*, 5th Dist. Stark No. CA-8262, 1991 WL 34877, *1 (Mar. 11, 1991).

**{¶ 39}** Additionally, R.C. 519.24 provides that when a property is used in violation of zoning ordinances, "any adjacent or neighboring property owner who would be especially damaged by such violation * * * may institute injunction * * * proceeding[s] to prevent, enjoin, abate, or remove such unlawful * * * use." Preventing or enjoining unlawful use suggests the possibility of an injunction preserving the status quo, like a Civ.R. 65 preliminary injunction. However, abating or removing an unlawful use necessarily involves making a change to the status quo. Therefore, the plain language of R.C. 519.24 makes injunctions issued under that statute different from preliminary

injunctions issued under Civ.R. 65 because the statute is explicitly not limited to preserving the status quo.

**{¶ 40}** Stated differently, injunctions granted under R.C. 519.24 are more specific in nature and can be broader in purpose than preliminary injunctions granted under Civ.R. 65. While the trial court called its injunction a "preliminary" injunction, its alteration of the status quo is expressly provided for by R.C. 519.24. The trial court's injunction order was extensive in its analysis of R.C. 519.24, the Gordons right to relief under the statute, and in its application of the evidence presented. On appeal, MCF takes no issue with the court's factual findings, including that the companies operating on its property did so in violation of the UTZR. Under the statute, that finding allowed the companies to be removed from the property entirely.

**{¶ 41}** As a result, MCF's arguments regarding an impermissible alteration of the status quo fail.

**{¶ 42}** We also find that MCF did not raise below or otherwise flesh out how the trial court's injunction and contempt orders short circuited the proceedings below, are "based on a limited record," or may have otherwise been in error. We have consistently held that "a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived." *State v. Keating*, 12th Dist. Clermont No. CA2019-08-064, 2020-Ohio-2770, ¶ 27; *State v. Salem*, 12th Dist. Butler No. CA2023-01-002, 2023-Ohio-2914, ¶ 19. Additionally, "appellate courts [do not] have to consider an error which the complaining party 'could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997), quoting *State v. Williams*, 51 Ohio St.2d 112, 117 (1997). These maxims are "designed to afford the opposing party a meaningful opportunity to respond to issues or errors that

may affect or vitiate his or her cause." *Id.*

**{¶ 43}** MCF's counsel stated at the September 9, 2022 evidentiary hearing, "[M]y understanding is we're not here today for their one bite at the apple under the statutory [R.C. 519.24] injunction. If we are, so be it. But I don't think [the Gordons are] entitled to come back later and again argue for it with more evidence." MCF therefore indicated preparedness to proceed at the hearing regardless of whether the trial court's injunction simply prevented or enjoined more unlawful use, similar to a preliminary injunction, or abated or removed such use entirely, which the trial court chose to do. This statement further suggests MCF did not need more time to supplement the factual record before the trial court issued its injunction. MCF only expressed concern that the Gordons should not be able to argue for relief multiple times and present more evidence on the issue later.

**{¶ 44}** Therefore, the procedural concerns MCF raises on appeal were not only not raised below, but inconsistent with its arguments at the trial level.

## Conclusion

**{¶ 45}** In summary, we find the trial court's preliminary injunction order was not vague. Additionally, the Gordons have standing to pursue a cause of action under R.C. 519.24. Finally, the language of R.C. 519.24 permitted the trial court to alter the status quo. MCF's arguments to the contrary are unavailing, unsubstantiated, or contradicted by the record.

**{¶ 46}** As a result of the foregoing, we find the trial court did not abuse its discretion in issuing the injunction or in finding MCF in contempt.

**{¶ 47}** We overrule MCF's sole assignment of error.

**{¶ 48}** Judgment affirmed.

PIPER and BYRNE, JJ., concur.